UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAUREN ELIZABETH FOLAN, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| SANTANDER CONSUMER USA INC.; GPI MA-DM INC. d/b/a/ MERCEDES-BENZ OF HANOVER; SANTANDER DRIVE AUTO RECEIVABLES LLC; SANTANDER DRIVE AUTO RECEIVABLES TRUST 2024-5; CITIBANK, N.A.; and EDWARD J. SACKMAN, Esq., | ) ) ) ) ) ) ) ) ) ) | No. 1:25-cv-11341-JEK |
| Defendants. | ) ) |  |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**KOBICK, J.**

Plaintiff Lauren Folan brought this action in May 2025 to challenge the repossession of a vehicle that she purchased from defendant GPI MA-DM Inc. d/b/a/ Mercedes-Benz of Hanover in September 2024. To finance the purchase, Folan took out an installment loan from GPI, which immediately transferred its interest in the loan to defendant Santander Consumer USA Inc. When Folan failed to make monthly payments on the loan, Santander returned the loan to GPI. After granting Folan an opportunity to cure her default, GPI repossessed the vehicle in May 2025. Folan now claims that the repossession was unlawful because Santander did not, in fact, transfer its interest in the loan to GPI. She alleges that Santander instead securitized the loan in October 2024 and, consequently, had no interest to transfer to GPI before the repossession.

Pending before the Court is Folan's motion for a temporary restraining order and preliminary injunction, which asks the Court to order GPI to return the vehicle to her. For the reasons that follow, that motion will be denied. Folan has not demonstrated that she is likely to succeed on the merits of her claims because, among other reasons, she has not produced evidence that Santander securitized the loan or that GPI acted unlawfully when it repossessed the vehicle. The uncontroverted evidence before the Court instead indicates that GPI lawfully exercised its contractual right to repossess the vehicle following Folan's default. And although Folan may experience some hardship without a reliable mode of transportation, the balance of the equities does not favor preliminary injunctive relief.

## BACKGROUND

I. **Factual Background.**

The following facts are drawn from the amended complaint and the parties' evidentiary submissions.

On September 4, 2024, Folan purchased a 2025 Mercedes-Benz GLC350E4 from GPI for $72,448.19. ECF 8, ¶ 10; ECF 12-1, ¶ 3; *see* ECF 1-3, at 1-2 (motor vehicle purchase contract). Folan paid $2,000 cash for the vehicle and financed the remaining purchase balance by entering into a retail installment sales contract ("RISC" or "loan") with GPI. *See* ECF 8, ¶ 11; ECF 1-3, at 3-6. Pursuant to the RISC, GPI agreed to loan Folan $70,448.19 in exchange for her promise to make 72 monthly payments of $1,353.98. ECF 1-3, at 3. The RISC included a section titled "TRUTH-IN-LENDING DISCLOSURES," which disclosed the material terms of the loan and informed Folan that she was giving GPI a security interest in the vehicle. *See id.* It also included an arbitration clause. *See id.* at 3, 6. Pursuant to a provision at the end of the RISC, GPI assigned its interest in the loan to Santander upon the contract's execution. *See id.* at 6.

Folan alleges that, on October 29, 2024, Santander securitized the RISC into the Santander Drive Auto Receivables Trust 2024-5. ECF 8, ¶¶ 14-15. In support of this assertion, she has submitted an "Auto Loan Securitization Analysis Report," which is dated January 29, 2025, and was prepared by Arthur Bernardo, who identifies himself as an "Expert Analyst on Auto Agreement Asset Backed Securities Data." ECF 1-4, at 35.[1] The report identifies a "Delaware statutory trust" titled Santander Drive Auto Receivables Trust 2024-5, which, the report asserts, consists of pooled installment contracts or loans "secured by new and used automobiles, heavy-duty trucks, light-duty trucks, SUVs and vans." *Id.* at 7. The report also opines that the 2024-5 trust "matches the characteristics for securitizing" the RISC, but it does not provide any direct evidence that the RISC was, in fact, securitized. *Id.* at 17. Rather, the report acknowledges that the RISC might also be held by GPI or have been placed in a "private placement securitization." *Id.*

Folan's first monthly payment was due on October 19, 2024. ECF 1-3, at 3. She failed to make this payment or any monthly payment due thereafter. *See* ECF 12-1, ¶ 6. Consequently, in December 2024, Santander notified GPI that it was transferring the RISC back to GPI because of Folan's default. *Id.* ¶ 7. The record does not indicate whether Santander communicated this to Folan, who, on February 10 and March 5, 2025, sent Santander two "Qualified Written Requests" concerning the RISC. *See* ECF 8, ¶¶ 17-18; ECF 1-5.[2] Both requests demanded that Santander "apply funds from the Cash Collateral Deposit Account to satisfy" the outstanding balance on the RISC. ECF 1-5, at 2, 9, 14 (emphasis omitted). The requests did not, however, specify what "Cash Collateral Deposit Account" she referred to, nor did they indicate how that account was related to

---

[1] Bernardo avers that he was certified through Bloomberg, LP's "Ambassador Program" to run searches on the Bloomberg terminal, but he does not otherwise provide his credentials, academic training, or employment history. ECF 1-4, at 35.

[2] Folan sent two copies of the second request, first on March 5 and then again on March 6, 2025. *See* ECF 1-5, at 9, 14.

3

the RISC. *See generally id.* Folan alleges that Santander did not respond to, or acknowledge receipt of, either request. ECF 8, ¶ 19.[3]

On April 16, 2025, after Santander had transferred the RISC back to GPI, GPI sent Folan a notice informing her that she was in default of her repayment obligations under the RISC and that she would be required to pay the full amount due on the loan by May 7, 2025, or risk having the vehicle repossessed. *Id.* ¶¶ 20, 22; ECF 12-1, ¶ 8; ECF 1-6.[4] Folan did not pay the outstanding balance on the loan, and, on May 8, 2025, GPI repossessed the vehicle. ECF 12-1, ¶ 9. Later that day, GPI delivered written notice to Folan informing her that it had repossessed the vehicle and of her right to collect personal property that remained in the vehicle. *Id.* Folan subsequently collected her personal property. *Id.* GPI still holds the vehicle today. *Id.* ¶ 10.

## II.    Procedural History.

Before filing this lawsuit, Folan sued Santander in Bristol County Superior Court in January 2025, alleging that it had unlawfully denied a request to rescind the RISC that she had sent one month after purchasing the vehicle. *See* ECF 1-3, *Folan v. Santander Consumer USA, Inc.*, No. 25-cv-10006-ADB (D. Mass. Jan. 2, 2025). Santander removed the case to this Court and filed a motion to dismiss. *See* ECF 7, *Folan v. Santander Consumer USA, Inc.*, No. 25-cv-10006-ADB (D. Mass. Jan. 30, 2025). Rather than oppose the motion, Folan voluntarily dismissed the

---

[3] The substance of the March 5 request belies this allegation. In the first paragraph of that request, Folan writes: "I received your last correspondence which was unacceptable. You failed to answer the questions. Instead you attached a copy of the fraudulent note once again proving your intent to commit fraud." ECF 1-5, at 9.

[4] In his declaration, Frank Mazziotti, GPI's general manager, states that the notice informed Folan that the total amount due under the loan was $72,072.64. ECF 12-1, ¶ 8. The notice in fact represented that Folan owed $74,072.64. ECF 1-6.

case without prejudice on February 10, 2025. *See* ECF 9, *Folan v. Santander Consumer USA, Inc.*, No. 25-cv-10006-ADB (D. Mass. Feb. 10, 2025).[5]

On May 13, 2025, Folan filed this lawsuit, naming as defendants GPI MA-DM Inc. d/b/a/ Mercedes-Benz of Hanover; Santander Consumer USA Inc.; Santander Drive Auto Receivables LLC; Santander Drive Auto Receivables Trust 2024-5; Citibank, N.A.; and Edward J Sackman, Esq., who serves as counsel for GPI. ECF 1. The original complaint asserted claims for a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) (Count I); a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (Count II); a violation of the Due Process Clause of the Fourteenth Amendment (Count III); breach of contract (Count IV); and wrongful repossession (Count V). ECF 1, ¶¶ 36-45. Folan attached to the complaint copies of the RISC, ECF 1-3, at 3-6; the Analysis Report, ECF 1-4; the qualified written requests she sent Santander, ECF 1-5; and the notice of default she received from GPI, ECF 1-6. That same day, Folan also filed an emergency motion for a temporary restraining order and preliminary injunction that seeks, among other things, an order requiring GPI to return the vehicle to her. ECF 2. Folan filed an amended complaint, which names the same defendants and asserts the same claims as the original complaint, the next day. ECF 8.

On May 14, 2025, the Court set a briefing schedule and ordered Folan to serve a copy of the summons, complaint, and motion on each of the defendants. ECF 6. After receiving oppositions from Santander, GPI, and Sackman, ECF 9, 12,[6] 13, and Folan's replies to each, ECF 17, 18, 19, the Court held a hearing and took the motion under advisement, ECF 32.

---

[5] Santander reports, and Folan later confirmed, that Folan also initiated an arbitration against it in January 2025, which was voluntarily dismissed on February 10, 2025. *See* ECF 9, at 2.

[6] GPI attached to its opposition the sworn declaration of its general manager, Frank Mazziotti. ECF 12-1.

5

## STANDARD OF REVIEW[7]

"'A preliminary injunction is an extraordinary and drastic remedy . . . that is never awarded as of right." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (quotation marks and citations omitted). To secure a preliminary injunction, the plaintiff bears the burden to demonstrate: "'(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.'" *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (quoting *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)). The first "factor weighs most heavily in the preliminary injunction analysis," *CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 55 (1st Cir. 2020), and is considered "'the main bearing wall of the four-factor framework,'" *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996)). The Court liberally construes Folan's submissions because she is proceeding *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

---

[7] Because the relevant defendants filed oppositions to Folan's motion and appeared at the hearing, the Court considers whether Folan is entitled to a preliminary injunction rather than a temporary restraining order. *See Monga v. Nat'l Endowment for Arts*, 323 F. Supp. 3d 75, 82 (D. Me. 2018) ("To determine whether to issue a temporary restraining order, the Court applies the same four-factor analysis used to evaluate a motion for preliminary injunction."); *San Francisco Real Est. Invs. v. Real Est. Inv. Tr. of Am.*, 692 F.2d 814, 816 (1st Cir. 1982) (temporary restraining order was "in substance a preliminary injunction" where both parties received notice, filed written memoranda, and were heard at a hearing).

**DISCUSSION**

**I.      Likelihood of Success on the Merits.**

Folan's amended complaint asserts each of her five claims against each defendant. *See* ECF 8, ¶¶ 36-45. But as to four of the six defendants, the complaint does not allege facts giving rise to a plausible inference of liability, and Folan's motion does not further connect these defendants to any of her claims. *See Redondo Waste Sys., Inc. v. Lopez-Freytes*, 659 F.3d 136, 140 (1st Cir. 2011) (to state a plausible claim, the plaintiff must allege facts "linking each defendant to the grounds on which that particular defendant is potentially liable"). Specifically, the complaint does not allege any facts concerning Santander Auto Receivables LLC or Citibank, N.A., which appear to have been named solely because they are identified as "Securiti[z]ation Participants" in the Analysis Report. *See* ECF 1-4, at 6 (identifying Citibank as the "Note Trustee/Security Trustee" and "Paying Agent," and identifying Santander Drive Auto Receivables as the "Depositor"); *see generally* ECF 8. Although the complaint alleges that the RISC was securitized into the Santander Drive Auto Receivables Trust 2024-5, ECF 8, ¶ 14, it does not allege any conduct giving rise to liability that can be attributed to that defendant, *see generally id.* The complaint likewise omits factual allegations concerning GPI's counsel, Edward Sackman. *See id.*[8] Folan is, accordingly, unlikely to succeed on the merits of any claims against Santander Auto Receivables LLC;

---

[8] In her reply to Sackman's opposition brief, Folan argues for the first time that Sackman "actively facilitated and legitimized unlawful actions" related to the repossession, and she implies that he might be liable for civil and criminal conduct under the Racketeer Influenced and Corrupt Organizations Act. ECF 17, at 3. The Court declines to consider these assertions, which are conclusory, appear frivolous, and were not alleged in the complaint. *Cf., e.g.*, *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015) ("[P]laintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss." (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))).

Santander Auto Receivables Trust 2024-5; Citibank, N.A.; or Edward Sackman. *See Redondo Waste Sys.*, 659 F.3d at 140.

Folan's complaint and motion instead focus on the conduct of GPI and Santander. Count I asserts a violation of RESPA resulting from Santander's failure to respond to the qualified written requests Folan sent in February and March 2025. ECF 8, ¶¶ 36-37. Folan does not allege that she sent any such requests to GPI or that GPI had any obligation to respond to the requests she sent to Santander. The Court will therefore consider Folan's likelihood of success on this claim only as to Santander. *See Redondo Waste Sys.*, 659 F.3d at 140. Counts IV and V, alleging breach of contract and wrongful repossession, concern GPI's repossession of the vehicle. *See* ECF 8, ¶¶ 42-45. It is undisputed that Santander played no role in repossessing the vehicle and that it is not a party to the RISC. *See* ECF 1-3, at 3-6. The Court will, accordingly, consider Folan's likelihood of success on these claims only as to GPI. *See Redondo Waste Sys.*, 659 F.3d at 140.

A.   Real Estate Settlement Procedures Act Claim.

Folan first claims that Santander violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to the qualified written requests she sent in February and March 2025. Congress enacted RESPA to better protect consumers engaged in the real estate settlement process. *See* 12 U.S.C. § 2601. To that end, Section 2605(e) provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan," the servicer must acknowledge receipt of the letter within five days and take appropriate action in response to the letter within 30 days. *Id.* §§ 2605(e)(1)(A), (2); *see Fustolo v. Select Portfolio Servicing, Inc.*, 123 F.4th 528, 533 (1st Cir. 2024). A "federally related mortgage loan" is defined, in relevant part, as any loan that "is secured by a first or subordinate

lien on residential real property . . . designed principally for the occupancy of from one to four families." 12 U.S.C. § 2602(1)(A).

Folan cannot assert a claim for a violation of RESPA because the RISC is an automobile loan that was secured by a lien on the vehicle, not a "federally related mortgage loan" secured by a lien on real property. *See Peoples Nat'l Bank of Liberal v. Molz*, 239 Kan. 255, 257 (1986) (noting, in a case involving an automobile loan, that RESPA "has no application to personal property transactions and loans"); ECF 1-3, at 3 (RISC disclosure stating: "You are giving a security interest in the vehicle being purchased."). Santander was therefore not a "servicer of a federally related mortgage loan," as that term is defined in the statute, and it had no obligation under RESPA to respond to any qualified written requests it received from Folan. *See* 12 U.S.C. § 2605(e). Consequently, Folan has not shown a likelihood of success on her RESPA claim.

B.    Truth in Lending Act Claim.

Folan next contends that the defendants violated TILA, 15 U.S.C. § 1601 *et seq.*, because they allegedly failed to provide disclosures or obtain her consent before securitizing the RISC and because they failed to consistently identify the loan's "true creditor." ECF 8, ¶¶ 38-39. TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). The RISC contains a section titled "TRUTH-IN-LENDING DISCLOSURES" that discloses such terms. *See* ECF 1-3, at 3 (disclosing, among other things, the annual percentage rate, finance charge, amount financed, and total sale price). TILA also requires creditors in closed-end credit transactions,[9] such as the transaction at issue here, to

---

[9] "A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage

9

disclose whether they will obtain a security interest in the property being purchased as part of the transaction. *See* 12 C.F.R. § 1026.18(m). The RISC discloses this as well, stating under the same section: "You are giving a security interest in the vehicle being purchased." ECF 1-3, at 3.

Folan has not, however, identified any provision of TILA that requires a creditor to obtain a borrower's consent before securitizing a loan or to disclose to a borrower that it has assigned its interest in a loan.[10] *See* ECF 2, 8. Nor has the Court located any such provision through its own research. Indeed, courts have widely concluded that TILA does not provide a cause of action to plaintiffs asserting comparable claims. *See, e.g.*, *Bryant v. GM Fin.*, No. 23-cv-5136-MGL-SVH, 2023 WL 11825780, at *2 (D.S.C. Oct. 27, 2023) ("Plaintiff alleges that because Defendant allegedly improperly securitized his auto loan in violation of the TILA, he is no longer obligated to pay on it. Courts have repeatedly rejected this type of argument as frivolous." (footnote omitted) (collecting cases)), *report and recommendation adopted*, No. 23-cv-5136-MGL, 2024 WL 3158673 (D.S.C. June 25, 2024); *Parran v. Cap. One Auto Fin.*, No. 24-cv-0308-SAG, 2024 WL 3013162, at *4 (D. Md. June 14, 2024) ("None of the material disclosures required by TILA would be affected by securitization [of an auto loan]."). Folan is, accordingly, unlikely to succeed on her claim that the defendants violated TILA.

---

or car loan." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 n.22 (S.D.N.Y. 2011) (quotation marks omitted).

[10] At the hearing, Folan stated that she brings her TILA claim under 15 U.S.C. § 1641(g). That statute does not provide her a cause of action because—like RESPA, 12 U.S.C. § 2605—it applies only to mortgages on residential property. *See* 15 U.S.C. § 1641(g)(1) ("[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall . . . ."); *id.* § 1641(g)(2) (defining "mortgage loan" to mean "any consumer credit transaction that is secured by the principal dwelling of a consumer").

C.     Due Process Claim.

Folan next argues that the defendants abridged her due process rights under the Fourteenth Amendment because they repossessed her vehicle without giving her pre-deprivation notice, an opportunity to be heard, or sufficient judicial process. ECF 8, ¶¶ 40-41; ECF 2, at 3. "[T]he Fourteenth Amendment 'applies to acts of the states, not to acts of private persons or entities.'" *Johnson v. Educ. Testing Serv.*, 754 F.2d 20, 23 (1st Cir. 1985) (quoting *Rendell-Baker v. Kohn,* 457 U.S. 830, 837 (1982)). "Therefore, in reviewing constitutional claims, the Supreme Court has 'insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Conduct is attributable to a State if (1) the deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937.

Folan has neither alleged nor produced evidence that any conduct related to the repossession of her vehicle can be attributed to state actors. *See generally* ECF 8. She admits that the defendants are private entities, *see id.* ¶¶ 4-9, and she does not allege that any of them can "fairly be said to be a state actor," *Lugar*, 457 U.S. at 937. Folan does claim in a reply brief that "Santander acted under color of law by employing title systems, third-party agents, and state enforcement mechanisms." ECF 18, at 7. But this assertion is conclusory and unsupported by evidence or specific factual allegations. *See id.* It is also contradicted by the record evidence, which indicates that it was GPI, not Santander, that repossessed the vehicle. *See* ECF 12-1, ¶ 9. In any case, Folan has not proffered evidence that GPI acted under color of state law when it repossessed the vehicle, and she is therefore unlikely to succeed on the merits of her due process claim.

11

D.  Breach of Contract Claim.

Folan asserts that GPI breached the arbitration clause in the RISC by repossessing the vehicle without first pursuing arbitration. "To prevail on a claim for breach of contract, a plaintiff must demonstrate that [1] there was an agreement between the parties; [2] the agreement was supported by consideration; [3] the plaintiff was ready, willing, and able to perform his or her part of the contract; [4] the defendant committed a breach of the contract; and [5] the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016).

The text of the RISC belies Folan's contention that GPI was required to file a claim for arbitration before repossessing the vehicle. The RISC's arbitration clause repeatedly states that either party *may elect* to have a dispute decided by arbitration, but it does not state that either party *must* use arbitration to resolve a dispute or as a condition to repossessing the vehicle. *See* ECF 1-3, at 6 ("Either you or we may choose to have any dispute . . . decided by arbitration."); *id.* ("Any claim or dispute . . . between you and us . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."). The RISC further states that neither party "waive[s] the right to arbitrate any related or unrelated claims . . . by using self-help remedies, such as repossession." *Id.* By the contract's plain terms, GPI was entitled to repossess the vehicle following Folan's default on her loan payments without first pursuing arbitration. Because there is no basis to conclude that GPI breached the RISC when it exercised that right, Folan is unlikely to succeed on the merits of her breach of contract claim.

E.  Wrongful Repossession and Lack of Standing Claim.

Finally, Folan contends that GPI lacked standing to repossess the vehicle. She fails, however, to specify a cause of action for this claim, citing instead two cases concerning mortgages and foreclosure sales. *See* ECF 8, ¶¶ 44-45; ECF 2, at 3 (citing *U.S. Bank Nat'l Ass'n v. Ibanez*,

12

458 Mass. 637 (2011), and *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011)). Both are inapposite. In the first case, *U.S. Bank National Association v. Ibanez*, the Supreme Judicial Court held that foreclosure sales of residential properties were invalid because the banks that initiated the sales were unable to show that they had been assigned the mortgages at issue before the sales occurred, as required by Massachusetts law. *See* 458 Mass. at 648-52 (applying M.G.L. c. 183, § 21 and M.G.L. c. 244, § 14). The second case, *In re Veal*, confronted a similar issue under Illinois law, which provides that a party who has been assigned a mortgage can enforce a right against the mortgaged property only if it has also been assigned the promissory note secured by the mortgage. *See* 450 B.R. 897 at 915-17. Applying that rule, the court held that Wells Fargo could not make a colorable claim against a property for which it had been assigned a mortgage because it was unable to produce evidence that "it or its agent had actual possession" of the underlying note. *Id.* at 917.

Folan's wrongful repossession claim finds no foothold in *Ibanez* or *In re Veal* because those decisions are grounded in state law governing mortgages on real property, whereas this case arises from a secured consumer credit transaction pertaining to personal property. The key statutes at issue in *Ibanez*, M.G.L. c. 183, § 21 and M.G.L. c. 244, § 14, apply to mortgagees' power of sale. Neither statute provides a cause of action to a plaintiff, like Folan, who contends that her personal property was wrongfully repossessed. Folan has not, accordingly, demonstrated that she is likely to succeed on her claim for wrongful repossession.

## II. <u>Irreparable Harm, the Balance of the Equities, and the Public Interest.</u>

The remaining factors weigh against Folan's request for a preliminary injunction. Folan contends that she is likely to experience irreparable harm absent a preliminary injunction because, without a reliable mode of transportation, she will experience emotional distress and struggle to "conduct daily life." ECF 2, at 3. She also represented at the hearing that she has been required to

13

give up her employment since GPI repossessed the vehicle, and she expressed concern about her ability to attend upcoming medical appointments. Because the harm resulting from missed medical appointments and emotional distress often "cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy," injuries like these can, in some circumstances, support a finding of irreparable harm. *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005); *see United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 9 (1st Cir. 1987).

But irreparable harm "cannot be evaluated in a vacuum." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). It must instead "be juxtaposed and weighed in tandem" with the movant's likelihood of success on the merits. *Id.* Here, that likelihood is slim. And while Folan may experience hardship without a reliable mode of transportation, the evidence indicates that these harms are self-inflicted. *See* Charles A. Wright, Arthur Miller, Mary K. Kane & Alexandra D. Lahav, 11A Fed. Prac. & Proc. § 2948.1 (3d ed. May 2025 update) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."); *San Francisco Real Est. Invs. v. Real Est. Inv. Tr. of Am.*, 692 F.2d 814, 818 (1st Cir. 1982) (similar). Folan took out a loan for over $70,000 to buy a new Mercedes-Benz and then failed to make any payments on that loan for over six months. *See* ECF 12-1, ¶ 6. Had she made her monthly payments, the vehicle likely would not have been repossessed. *See* ECF 1-3, at 5 (RISC providing for repossession only in the case of a material default).

The balance of the equities and the public interest favor the defendants for the same reason. Pursuant to the RISC, Folan promised to make 72 monthly payments to GPI of $1,353.98, but failed to make a single one. *See* ECF 1-3, at 3; ECF 12-1, ¶ 6. She was nevertheless permitted to continue using the vehicle for over six months. *See* ECF 12-1, ¶ 9. Only after Folan was over

14

$9,000 in arrears did GPI exercise its contractual right to repossess the vehicle. *See* ECF 1-3, at 5; ECF 12-1, ¶¶ 8-9. It would be inequitable to order GPI to return the vehicle to Folan in these circumstances. Further, the established public interest in the freedom to contract in Massachusetts favors honoring the terms of the RISC, which authorized GPI to repossess the vehicle after Folan defaulted on the loan. *See* ECF 1-3, at 5; *Miller v. Cotter*, 448 Mass. 671, 683 (2007).

## CONCLUSION AND ORDER

For the foregoing reasons, Folan's emergency motion for a temporary restraining order and preliminary injunction, ECF 2, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: June 18, 2025                                        UNITED STATES DISTRICT JUDGE