UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN ELIZABETH FOLAN, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| SANTANDER CONSUMER USA INC.; <br> GPI MA-DM INC. d/b/a MERCEDES- <br> BENZ OF HANOVER; SANTANDER <br> DRIVE AUTO RECEIVABLES LLC; <br> SANTANDER DRIVE AUTO <br> RECEIVABLES TRUST 2024-5; <br> CITIBANK, N.A.; and EDWARD J. <br> SACKMAN, Esq., | ) <br> ) <br> ) No. 1:25-cv-11341-JEK <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS, CITIBANK, N.A.'s MOTION FOR JOINDER, AND PLAINTIFF'S MOTION TO STAY**

**KOBICK, J.**

Plaintiff Lauren Folan, proceeding *pro se*, brought this action in May 2025 to challenge the repossession of a vehicle that she purchased from defendant GPI MA-DM Inc. d/b/a Mercedes-Benz of Hanover in September 2024. To finance the purchase, Folan took out an installment loan from GPI, which immediately transferred its interest in the loan to defendant Santander Consumer USA Inc. ("Santander"). In April 2025, GPI notified Folan by letter that, because she had failed to make the installment payments due under the terms of the loan, she would need to pay the outstanding balance or risk repossession of her vehicle. When Folan did not pay that balance, her vehicle was repossessed. Folan then filed this lawsuit against GPI, Santander, and several other defendants, each of whom has now filed a motion to dismiss or a motion for joinder in a motion to dismiss. These motions will be granted, as Folan has failed to state a plausible claim challenging

the repossession of her vehicle. Folan's corresponding motion to stay this action pending arbitration will be denied.

## BACKGROUND

**I.      Factual Background.**

The following facts, which are assumed true on a motion to dismiss, are drawn from the amended complaint, documents fairly incorporated by reference in the original and amended complaints, and documents subject to judicial notice. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024).

On September 4, 2024, Folan purchased a 2025 Mercedes-Benz GLC350E4 from GPI for $72,448.19. ECF 8, ¶¶ 10, 13; ECF 1-3, at 1 (motor vehicle purchase contract). Folan paid $2,000 in cash for the vehicle and financed the remaining purchase balance of $70,448.19 by entering into a retail installment sales contract ("RISC" or "loan") with GPI. ECF 8, ¶¶ 11, 13; ECF 1-3, at 1, 3-6. Pursuant to the RISC, GPI agreed to loan Folan the outstanding balance in exchange for her promise to make 72 monthly payments of $1,353.98 starting on October 19, 2024. ECF 1-3, at 3. The RISC included a section titled "Truth-In-Lending Disclosures," which disclosed the material terms of the loan and informed Folan that she was "giving a security interest in the vehicle being purchased" to GPI. *See id.* (capitalization omitted). It also included an arbitration clause. *See id.* at 3, 6. Pursuant to a provision at the end of the RISC, GPI assigned its interest in the loan to Santander upon the contract's execution. *See id.* at 6.

Folan alleges that, on October 29, 2024, Santander securitized the RISC into the Santander Drive Auto Receivables Trust 2024-5 (the "2024-5 Trust"). ECF 8, ¶¶ 14-15. To support this assertion, Folan submitted with her complaint an "Auto Loan Securitization Analysis Report,"

dated January 29, 2025 and prepared by an individual named Arthur Bernardo. ECF 1-4, at 35.[1] The report identifies the 2024-5 Trust as a "Delaware statutory trust" that consists of pooled installment contracts or loans "secured by new and used automobiles, heavy-duty trucks, light-duty trucks, SUVs and vans." *Id.* at 7. The report opines that the 2024-5 Trust "matches the characteristics for securitizing" the RISC, but it does not provide direct evidence that the RISC was, in fact, securitized. *Id.* at 17. Instead, the report acknowledges that the RISC might be held by GPI or might have been placed in a "private placement securitization." *Id.* Folan alleges that she did not receive notice of the RISC's purported reassignment to the 2024-5 Trust at any time. ECF 8, ¶ 38.

Folan's first monthly payment under the RISC was due on October 19, 2024. ECF 1-3, at 3. On February 10 and March 6, 2025, Folan sent Santander "Qualified Written Requests" concerning the RISC. *See* ECF 8, ¶¶ 17-18; ECF 1-5.[2] Both requests demanded that Santander "apply funds from the Cash Collateral Deposit Account to satisfy" the outstanding balance on the RISC. ECF 1-5, at 2, 9, 14 (emphasis omitted); *see* ECF 8, ¶¶ 17-18. The requests did not, however, specify what "Cash Collateral Deposit Account" she referred to, nor did they indicate how that account was related to the RISC. *See generally* ECF 1-5. Santander did not respond to, or acknowledge receipt of, either request. ECF 8, ¶ 19.

On April 16, 2025, GPI sent Folan a certified letter informing her that she had defaulted on the RISC by "fail[ing] to make the installment payments due." ECF 1-6, at 1; *see* ECF 8, ¶ 20. To

---

[1] Arthur Bernardo, a self-identified "Expert Analyst on Auto Agreement Asset Backed Securities Data," avers that he was certified through Bloomberg, LP's "Ambassador Program" to run searches on the Bloomberg terminal, but he does not otherwise detail his credentials, academic training, or employment history. ECF 1-4, at 35.

[2] Folan sent two copies of the second request, first on March 5 and then again on March 6, 2025. *See* ECF 1-5, at 9, 14.

3

cure the default, the letter stated, Folan needed to pay the outstanding balance of $74,072.64 by May 7, 2025, or risk repossession of the vehicle. ECF 1-6, at 1. The letter also notified Folan that GPI had been assigned, and currently held, the interest in the RISC, though it "was previously with Santander Bank." *Id.*

Five days after receiving GPI's letter, on April 21, 2025, Folan sent GPI a "Notice of Fault and Opportunity to Cure" letter, which detailed GPI's alleged failure to respond to Folan's demands for verification of the status of the RISC. *See* ECF 1-5, at 20. Folan offered GPI 10 days to cure by providing the requested documentation and ceasing "all unauthorized actions." *Id.* at 20-21. Nevertheless, GPI subsequently repossessed her Mercedes-Benz. ECF 8, ¶ 28; *see* ECF 1-6, at 2. Folan does not currently have possession of the vehicle. ECF 8, ¶ 35.

## II.   Procedural History.

Before filing this lawsuit, Folan sued Santander in Plymouth County Superior Court in December 2024, alleging that it had unlawfully denied a request to rescind the RISC that she had sent one month after purchasing the vehicle. *See* ECF 1-3, *Folan v. Santander Consumer USA, Inc.*, No. 25-cv-10006-ADB (D. Mass. Jan. 2, 2025). Santander removed the case to this Court and filed a motion to dismiss. *See* ECF 7, *Folan v. Santander Consumer USA, Inc.*, No. 25-cv-10006-ADB (D. Mass. Jan. 30, 2025). Rather than oppose the motion, Folan voluntarily dismissed the case without prejudice on February 10, 2025. *See* ECF 9, *Folan v. Santander Consumer USA, Inc.*, No. 25-cv-10006-ADB (D. Mass. Feb. 10, 2025).

On May 13, 2025, Folan filed her original complaint in this action and, the following day, an amended complaint. ECF 1, 8. Her amended complaint names six defendants: GPI; Santander; Santander Drive Auto Receivables LLC ("Santander Drive"); the 2024-5 Trust; Citibank, N.A.; and attorney Edward J. Sackman. ECF 8, ¶¶ 4-9. Against each defendant, it asserts claims for a

violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) (Count I); a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*. (Count II); a violation of the Due Process Clause of the Fourteenth Amendment (Count III); breach of contract (Count IV); and wrongful repossession in violation of Article 9 of the Uniform Commercial Code (Count V). ECF 8, ¶¶ 36-45. Folan attached to the complaint copies of the Motor Vehicle Purchase Agreement and RISC, ECF 1-3; the Auto Loan Securitization Analysis Report, ECF 1-4; the qualified written requests she sent to Santander, ECF 1-5, at 2-17; the notice of default she received from GPI, ECF 1-6; and the demand letter she sent GPI in response, ECF 1-5, at 20-22. She also filed a motion for a temporary restraining order and preliminary injunction that sought, among other things, an order requiring GPI to return the vehicle to her. ECF 2. After holding a hearing, the Court denied that motion, concluding that Folan was not likely to succeed on the merits of her claims. ECF 43.

Meanwhile, Santander, Santander Drive, and the 2024-5 Trust filed a motion to dismiss or, in the alternative, to compel arbitration, ECF 30; GPI filed another motion to dismiss, ECF 36; and Sackman filed a third motion to dismiss, ECF 38, all pursuant to Federal Rule of Civil Procedure 12(b)(6). Citibank separately filed a motion to join Santander's motion to dismiss pursuant to Rule 12(g)(1). ECF 47. On October 28, 2025, after receiving Folan's oppositions, the Court held a hearing and took the motions under advisement. ECF 52. Two days later, Folan filed a motion seeking to stay the case pending arbitration. ECF 53.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-*

*Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court may consider "'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quotation marks omitted). Where, as here, the plaintiff is proceeding *pro se*, the Court construes the complaint liberally. *See Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## DISCUSSION

### I. Claims Against Santander Drive, the 2024-5 Trust, Citibank, and Sackman.

Four of the six defendants—Santander Drive, the 2024-5 Trust, Sackman, and Citibank—contend that the claims against them must be dismissed because Folan does not allege facts plausibly linking them to any of the claims asserted in the amended complaint. To state a claim, a plaintiff must, at a minimum, "allege facts linking each defendant to the grounds on which that particular defendant is potentially liable." *Redondo Waste Sys., Inc. v. López-Freytes*, 659 F.3d 136, 140 (1st Cir. 2011). Folan fails to clear this low bar for each of these defendants. The amended complaint lists Santander Drive and Citibank as defendants but alleges no facts connecting either defendant to actionable conduct. With respect to the 2024-5 Trust, Folan alleges only that the RISC was securitized into the 2024-5 Trust. ECF 8, ¶ 14. And with respect to Sackman, she alleges only

6

that he "acted without verifying the chain of assignment." *Id.* ¶ 33.[3] She does not explain how these meager allegations could give rise to liability under any of the claims she has asserted, nor does she explain how these allegations could alert these defendants to the basis for the claims asserted against them. *See Redondo*, 659 F.3d at 141 ("The whole point of notice pleading is to apprise defendants of the claims against them."). Because Folan's allegations do not plausibly link Santander Drive, the 2024-5 Trust, Sackman, and Citibank to "grounds on which [they may be] potentially liable," her claims against them will be dismissed. *Id.* at 140.

**II.    Claims Against GPI and Santander.**

Most of the factual allegations in the amended complaint concern GPI and Santander's conduct. The Court will address each claim in turn.

   A.    Real Estate Settlement Procedures Act.

Count I of the amended complaint asserts that Santander and GPI violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to the qualified written requests that Folan sent Santander in February and March 2025. ECF 8, ¶¶ 19, 36-37. Congress enacted RESPA to better protect consumers engaged in the real estate settlement process. *See* 12 U.S.C. § 2601. To that end, Section 2605(e) provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan," the servicer must acknowledge receipt of the letter within five days and take appropriate action in response to the letter within 30 days. *Id.* §§ 2605(e)(1)(A), (2); *see Fustolo v. Select Portfolio*

---

[3] In her opposition to Sackman's motion to dismiss, Folan argues for the first time that Sackman "acted in furtherance of a repossession based on fraud and without verifying facts or legal standing" and "sent notices asserting creditor claims without evidence." ECF 46, at 3. The Court will not consider these assertions, as they were not alleged in the complaint. *See Velasquez v. Bos. Hous. Auth.*, No. 17-cv-12481-PBS, 2018 WL 3912360, at *2 (D. Mass. Aug. 14, 2018) ("[I]t is well established that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotation marks omitted)).

*Servicing, Inc.*, 123 F.4th 528, 533 (1st Cir. 2024) ("RESPA requires servicers to respond to a borrower's notice . . . related to the servicing of a mortgage loan."). A "federally related mortgage loan" is defined, in relevant part, as any loan that "is secured by a first or subordinate lien on residential real property . . . designed principally for the occupancy of from one to four families." 12 U.S.C. § 2602(1)(A).

Folan cannot state a plausible claim for a violation of RESPA because the RISC is an automobile loan that was secured by a lien on the vehicle, not a "federally related mortgage loan" secured by a lien on real property. *See Peoples Nat'l Bank of Liberal v. Molz*, 239 Kan. 255, 257 (1986) (noting, in a case involving an automobile loan, that RESPA "has no application to personal property transactions and loans"); ECF 1-3, at 3 (RISC disclosure stating: "You are giving a security interest in the *vehicle* being purchased." (emphasis added)). Santander and GPI were therefore not "servicer[s] of a federally related mortgage loan," as that term is defined in RESPA, and had no obligation under the statute to respond to any qualified written requests they received from Folan. *See* 12 U.S.C. § 2605(e)(1)(A). Since RESPA does not govern the RISC, "it is clear that no relief could be granted under any set of facts" that Folan has alleged in her complaint, and Folan's RESPA claim must be dismissed. *Peña-Borrero* v. *Estremeda*, 365 F.3d 7, 11 (1st Cir. 2004).

B.    Truth in Lending Act.

Count II alleges that GPI and Santander violated TILA, 15 U.S.C. §§ 1601 *et seq.*, by failing to provide disclosures or obtain Folan's consent before securitizing the RISC and by continually neglecting to identify the "true creditor" of her loan. ECF 8, ¶¶ 38-39. TILA "requires creditors to disclose clearly and accurately all the material terms of a credit transaction," *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006), including "disclosures on charges, fees,

interest rates, and [the consumer's] rights under the loan," *In re Sheedy*, 801 F.3d 12, 19 (1st Cir. 2015). TILA also requires a disclosure if "a security interest has been taken in" the property being purchased as part of the credit transaction. 15 U.S.C. § 1638(a)(9); *see also* 12 C.F.R. § 1026.18(m). "In closed-end transactions such as [a] car loan, the required disclosures under TILA are to be made [at] the time that credit is extended." *Begala v. PNC Bank, N.A.*, 163 F.3d 948, 950 (6th Cir. 1998).[4]

The amended complaint does not allege that GPI and Santander failed to make these TILA-required disclosures at the time credit was extended to Folan through the RISC. Indeed, the documents incorporated into the complaint detail GPI's compliance with TILA through disclosures of the RISC's material terms in the "Truth-In-Lending Disclosures" section of that contract. *See* ECF 1-3, at 3 (capitalization omitted). The RISC contains disclosures about, for example, the amount financed, the annual percentage rate, the finance charge, the total sale price, and Folan's payment schedule. *See id.* It also disclosed that Folan was "giving a security interest in the vehicle being purchased" to GPI when she signed the contract, and that GPI would assign its interest in the contract to Santander. *Id.* at 3, 6.

Rather than fault GPI and Santander for failing to make disclosures before the RISC was signed, Folan contends that these defendants violated TILA by failing to make *subsequent* disclosures regarding the loan's "true creditor" and securitization. ECF 8, ¶¶ 38-39. She fails, however, to specify any provision of TILA that requires these subsequent disclosures. At the hearing, she argued that 15 U.S.C. §§ 1601, 1631, and 1641(g) impose such a duty on GPI and

---

[4] "A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage, or car loan." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 n.22 (S.D.N.Y. 2011) (quotation marks omitted).

Santander. Section 1601 states Congress's findings and declaration of purpose in enacting TILA, but it does not itself impose substantive obligations. *See* 15 U.S.C. § 1601. Section 1631 requires creditors to disclose "to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter." *Id.* § 1631(a). The provision of TILA's subchapter applicable to consumer automobile loans is Section 1638, which states that required "disclosures . . . shall be made *before* the credit is extended." *Id.* § 1638(b) (emphasis added); *see Begala*, 163 F.3d at 950 (required TILA disclosures under 15 U.S.C. § 1638(b) for car loans must be made at the time credit is extended). Section 1641(g) requires "not later than 30 days after the date on which a *mortgage loan* is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1) (emphasis added). This section does not apply because the RISC is an automobile loan, not a "mortgage loan" under TILA. *Id.* § 1641(g)(2) (defining "mortgage loan" as "any consumer credit transaction that is secured by the principal dwelling of a consumer"); *see id.* § 1602(w) (defining "dwelling" as "a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives").

Folan also contended at the hearing that 12 C.F.R. § 1026.18(a) imposes on GPI and Santander a duty to disclose the RISC's "true creditor" and any subsequent reassignments after the assignment to Santander. That regulation provides, in pertinent part, that "[f]or each transaction other than a mortgage transaction subject to § 1026.19(e) and (f), the creditor shall disclose . . . [t]he identity of the creditor making the disclosures." 12 C.F.R. § 1026.18(a). As with the disclosures under Section 1638, however, the creditor need only make disclosures *before* the transaction is consummated. *Id.* § 1026.17(b) ("The creditor shall make disclosures before consummation of the transaction."). Ultimately, as recognized by courts across the country, TILA

10

does not provide a cause of action to plaintiffs asserting comparable claims arising out of automobile loans. *See, e.g.*, *Cox v. Bank of Am.*, No. 23-cv-01977-DAR, 2025 WL 638905, at *3 (N.D. Ohio Feb. 27, 2025) (dismissing complaint involving car loan because the defendant's subsequent "non-disclosure of the securitization process" did not violate TILA); *Bryant v. GM Fin.*, No. 23-cv-5136-MGL-SVH, 2023 WL 11825780, at *2 (D.S.C. Oct. 27, 2023) (collecting cases rejecting as "frivolous" a plaintiff's allegation "that because Defendant allegedly improperly securitized his auto loan in violation of the TILA, he is no longer obligated to pay on it" (footnote omitted)), *report and recommendation adopted*, 2024 WL 3158673 (D.S.C. June 25, 2024); *Parran v. Cap. One Auto Fin.*, No. 24-cv-0308-SAG, 2024 WL 3013162, at *4 (D. Md. June 14, 2024) ("None of the material disclosures required by TILA would be affected by securitization [of an auto loan]."). Folan's TILA claim against GPI and Santander is therefore dismissed.

    C.    <u>Due Process.</u>

Count III asserts that GPI and Santander abridged Folan's Fourteenth Amendment due process rights by repossessing her vehicle without giving her pre-deprivation notice, an opportunity to be heard, or sufficient judicial process. ECF 8, ¶¶ 40-41. "[T]he Fourteenth Amendment 'applies to acts of the states, not to acts of private persons or entities.'" *Johnson v. Educ. Testing Serv.*, 754 F.2d 20, 23 (1st Cir. 1985) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)). "Therefore, in reviewing constitutional claims, the Supreme Court has 'insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Conduct is attributable to a State if (1) the deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state

actor." *Lugar*, 457 U.S. at 937. "If there is no state action, the plaintiff's claim fails." *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015).

Folan has not alleged that any conduct related to the repossession of her vehicle can be attributed to a state actor. *See generally* ECF 8. She admits that the defendants are private entities, *see id.* ¶¶ 4-9, and she does not plead factual allegations suggesting that their repossession of her vehicle could "be classified as state action," *Jarvis*, 805 F.3d at 8. Even though the repossession of her vehicle was authorized by statute, *see* M.G.L. c. 255B, § 20B(a), "mere legislative sanction of a private remedy does not constitute state action," *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 33 (1st Cir. 2014). Indeed, the First Circuit has long held that "[t]he fact that defendants' conduct was permitted and regulated by state law—as much private conduct is—does not by itself make the conduct's connection with the state sufficiently close so that the private conduct 'may be fairly treated as that of the State itself.'" *Davis v. Richmond*, 512 F.2d 201, 203 (1st Cir. 1975) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974)). Folan has not, therefore, plausibly alleged that the repossession of her vehicle can be fairly attributed to the state, and her due process claim must be dismissed. *Cf. Fitzgerald v. Cleland*, 498 F. Supp. 341, 348 (D. Me. 1980) (finding that a bank's foreclosure processes pursuant to Maine law does not implicate the state in the action, but "merely announced the circumstances under which its courts will not interfere with a private act") (citation and quotation marks omitted)).

D.   Breach of Contract.

Count IV claims that GPI and Santander breached the RISC by failing to first pursue arbitration before repossessing Folan's vehicle. ECF 8, ¶¶ 42-43. To state a claim for breach of contract, Folan must allege (1) the existence of an agreement between the parties, supported by consideration; (2) that she was "ready, willing, and able to perform" her contractual obligations;

12

(3) that the defendants nevertheless breached the contract; and (4) that the breach resulted in harm to her. *477 Harrison Ave., LLC v. JACE Bos., LLC*, 483 Mass. 514, 523 (2019).

The RISC constitutes an agreement between Folan and GPI supported by consideration. *See* ECF 1-3, at 3-6 (GPI agreeing to provide Folan with a line of credit to purchase a vehicle in exchange for monthly repayments plus interest). The plain terms of the RISC, however, foreclose Folan's assertion that GPI or Santander breached the contract by repossessing her vehicle without first pursuing arbitration. The RISC's arbitration clause states that either party *may elect* to have a dispute decided by arbitration, but it does not state that either party *must* use arbitration to resolve a dispute or as a condition to repossessing the vehicle. *See id.* at 6 ("Either you or we may choose to have any dispute . . . decided by arbitration."); *id.* ("Any claim or dispute . . . between you and us . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."). The RISC further states that neither party "waive[s] the right to arbitrate any related or unrelated claims . . . by using self-help remedies, such as repossession." *Id.*

By the contract's plain terms, GPI was entitled to repossess the vehicle following Folan's default on her loan payments without first pursuing arbitration. Because there is no basis to conclude that GPI breached the RISC when it exercised that right to repossess, the Court must dismiss her breach of contract claim. It will, furthermore, deny her request to stay this action pending arbitration. The dismissal of her breach of contract claim and this lawsuit does not, however, foreclose any party from pursuing arbitration.

E.      Wrongful Repossession Under the Uniform Commercial Code.

Count V asserts that GPI and Santander wrongfully repossessed Folan's vehicle in violation of "UCC Article 9 and state law." ECF 8, ¶¶ 44-45. Pursuant to Article 9 of the Uniform Commercial Code ("UCC"), as adopted by the Massachusetts Legislature, "[a]fter default, a

13

secured party . . . may take possession" of a vehicle, "without judicial process, if it proceeds without breach of the peace." M.G.L. c. 106, §§ 9-609(a)(1), (b)(2). A "secured party" is defined as an entity "in whose favor a security interest is created or provided for under a security agreement," *id.* § 9-102(73)(A), and a "security agreement" is "an agreement that creates or provides for a security interest," *id.* § 9-102(74). Because the RISC created a security interest for GPI in Folan's vehicle, GPI was a secured party with authority under the UCC to repossess the vehicle upon her default. *See* ECF 1-3, at 3. And Folan's amended complaint contains no factual allegations suggesting that GPI breached the peace when it repossessed that vehicle. *See Lavalley v. Skyline Recovery Serv., Inc.*, 788 F. Supp. 3d 224, 232-33 (D. Mass. 2025) (discussing the standard for a breach-of-peace claim under M.G.L. c. 106, §§ 9-609(a)(1) and (b)(2)).

Folan nevertheless argued at the hearing, and again in her post-hearing brief, that GPI's repossession of her car violated Section 203(b)(2) of Article 9 of the UCC.[5] As relevant here, Section 203 provides that a "security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral," and that the "security interest is enforceable against the debtor and third parties with respect to the collateral only if: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party;" and (3) "the debtor has authenticated a security agreement that provides a description of the collateral." M.G.L. c. 106, §§ 9-203(a)-(b). Folan, as the debtor, does not dispute that the RISC provided a description of the collateral—that is, her vehicle—or that value was given through the

---

[5] Folan may seek injunctive relief or damages for noncompliance with Article 9. *See* M.G.L. c. 106, §§ 9-625(a)-(b); *Reading Co-Op. Bank v. Suffolk Construction Co., Inc.*, 464 Mass. 543, 549 (2013) ("Article 9 contains a comprehensive scheme for enforcement of rights and allocation of losses.").

RISC. Rather, she contends that GPI, the creditor, did not have rights in the vehicle at the time it was repossessed because GPI has not demonstrated a valid assignment of the RISC.

Folan's argument misconstrues Section 203(b)(2). The provision she invokes—Section 203—addresses the creation of valid and enforceable security interests. *See* J. White, R. Summers & R. Hillman, *Uniform Commercial Code*, § 31:1 (6th ed.) ("Section 9-203 lays out the steps a party must take to create an Article 9 enforceable security interest. Once these steps are taken, the security interest comes into existence."); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Penn. 2006); *Scallop Petroleum Co. v. Banque Trad-Credit Lyonnais*, 690 F. Supp. 184, 187 (S.D.N.Y. 1988). And by its plain text, Section 203(b)(2) concerns whether the *debtor* has rights in the collateral. There is no dispute here that, as part of the RISC, Folan had rights in the vehicle so long as she made her monthly payments. *See* ECF 1-3, at 3 ("By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller – Creditor . . . according to the payment schedule."). Folan's interpretation of Section 203(b)(2) to concern whether the *creditor* has rights in the collateral is flawed: Section 203(b)(2) says nothing about the creditor's rights, nor does it address, as Folan contends, the right of GPI as the secured party to repossess the vehicle. *See Lopes v. Fafama Auto Sales*, 2011 Mass. App. Div. 277 (Dist. Ct. 2011) (all the conditions of M.G.L. c. 106, § 9-203(b) were met when "value was given by [the car dealership] in agreeing to sell the vehicle and by [the plaintiff], in return, by providing a down payment and promising to repay the balance," the plaintiff "took title to the vehicle," and the parties' agreement created a security interest in the vehicle). GPI and Santander are, accordingly, entitled to dismissal of Count V.[6]

---

[6] Folan also argued at the hearing, and in her post-hearing brief, that GPI's repossession of her car violated Section 607 of Article 9 of the UCC. Section 607, as relevant here, empowers a "secured party" to take a range of collection and enforcement actions against an account debtor or

## CONCLUSION AND ORDER

For the foregoing reasons, the defendants' motions to dismiss, ECF 30, 36, 38, and Citibank's motion for joinder, ECF 47, are GRANTED. Folan's motion to stay pending arbitration, ECF 53, is DENIED. This action is DISMISSED.

SO ORDERED.

                                                                                                       /s/ Julia E. Kobick
                                                                                                       JULIA E. KOBICK
                                                                                                       UNITED STATES DISTRICT JUDGE

Dated: November 7, 2025

---

other person obligated on collateral. M.G.L. c. 106, §§ 9-607(a)(1)-(5). Folan does not specify what provision of Section 607 GPI and Santander allegedly violated, and given the facts alleged in the complaint, it is difficult to discern which provision she believes relevant to this case. Although the Court must construe a *pro se* complaint liberally, it need not guess at the claim the plaintiff wishes to assert. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 79 (1st Cir. 2014) (affirming dismissal of claim where the *pro se* plaintiff failed to identify in his "complaint, opposition to the motion to dismiss, or any of his briefing . . . which of [the statute's] multitude of requirements he believe[d] were" violated).